323-0060 The People of the State of Illinois Appellant v. Christopher D. Smith Appellee Thank you. Mr. Atwood, interesting to see you as appellant. You may start. Thank you, Your Honor. Good morning, Your Honors, Counsel. May it please the Court. My name is Nicholas Atwood and I represent the people of the State of Illinois in this matter. The issue before the Court today is whether the trial court properly granted defendant's motion to suppress evidence of a firearm which was obtained pursuant to an inventory search conducted on a vehicle. So the trial court committed a number of errors when it granted the defendant's motion. At the motion hearing, defendant's counsel had argued that the officer did not have probable cause to perform an inventory search of the vehicle and the attorney relied on a policy number 510 by the Kankakee City Police Department which deals with general tows as well as a first district case called People v. Clark. The thrust of the argument was essentially that there were other options available to the officer. He didn't have to perform an inventory search. He could have left the vehicle parked lawfully on the side of the street in front of 900 North Harrison, but he did not do so. When the trial court issued its ruling in this case, it relied on a number of improper factors and it reached a number of conclusions that were both contrary to law and the facts of the hearing. First, the trial court stated that it believed that Officer Huebner had acted in a pretextual way and he wanted to search the vehicle because there was already an active gun investigation against both the defendant and Jalen Coffey, who was a passenger in the The trial court's conclusion that this was a pretext was incorrect. First, even if the officer had acted under a pretext, the U.S. Supreme Court in Wren made it clear that an officer's intent or motivation is not relevant if probable cause existed. The officer testified in this case numerous times that he was acting pursuant to an article 36 seizure of the criminal code. That was also codified in Policy 606 of the Kentucky City Police Department. That is, when a vehicle has committed the offense of aggravated fleeing and eluding, it is automatically eligible to be seized under Article 36. The investigating officer testified that he had observed the vehicle commit this offense and he stopped pursuit because of department policies. It wasn't a forcible felony, so they didn't want to endanger citizens, but he went to the address at 900 North Harrison Street where he had an assumption that the vehicle would go. Within seven minutes, the vehicle arrived. He approached the vehicle and he told the driver that he was going to perform an inventory search and he also performed a pat down of the defendant and the driver. The defendant doesn't dispute that there was a basis for making this stop. The aggravated fleeing and eluding is not disputed in this case. It's requires an inventory search before the vehicle is going to be impounded. The officer testified numerous times to this and the trial court found the officer was quote very credible in his testimony. So it was against the trial, the manifest way to the evidence for the trial courts conclude that no, he wasn't acting under Article 36 or Policy 606. He was acting under this pretextual issue. Even if he was, the trial court was legally incorrect in concluding that the pretext should be a basis for the granting of the motion because there was independent basis for the stop and for the subsequent search. So that was an incorrect basis. In addition, the entire analysis of the facts that the trial court engaged in was under an incorrect policy, Policy 510, and it relied on case law and People v. Clark, neither of which have anything to do with an asset forfeiture. Policy 510 is a general towing policy that makes no mention whatsoever of what to do in an asset forfeiture proceeding. It's based on a situation, for example, if a vehicle cannot be driven because maybe the driver was inebriated or doesn't have a license, the officers have discretion to tow that vehicle. But there are certain factors to consider whether, you know, for example, can you leave this vehicle here? Is it safely parked in the street? Those are all things that happen in a general tow situation where an inventory search is not going to come into play automatically. When you tow a vehicle under the asset forfeiture statute, it's an automatic inventory search and an automatic seizure. Therefore, to analyze the issue under the elements contained in 510 and under the common law decision discussed in Clark is completely incorrect. So the entire analysis is flawed from the get-go. This establishes that the court's ruling was seriously flawed. In addition, the court also noted that there was a problem with the paperwork that was filed after the tow had been completed. There, another officer filled out the paperwork and indicated that the basis of the tow was for a weapons offense. There are several problems with this. First of all, it wasn't the actual officer who performed the search that filled out the report. Huebner testified numerous times he was doing it pursuant to an inventory search and therefore the foul up on the paperwork was not relevant. Moreover, even if Huebner had been the one that had filled out the report in People v. Ocone, a case which defendant didn't discuss in his brief, the failure to complete an appropriate form after the fact does not affect the objective reasonableness of the search. All of the probable cause that was needed for the search occurred before that paperwork was filed. It was simply an administrative function. For the court to put any weight on that, especially in finding that he was very credible in his testimony, was against the manifest way to the evidence. It wouldn't even have been impeaching given the fact that the court found that the officer was very credible. One of the other factors that the court noted was that the officer didn't know who was driving the vehicle when it committed the aggravated fleeing and eluding. It took issue with that and noted it in its ruling. But again, this was an irrelevant conclusion because an asset forfeiture is an in rem proceeding. It doesn't determine guilt or innocence. All that matters is that Huebner testified that this was the same vehicle that he observed commit the aggravated fleeing and eluding and that he was subsequently performing the inventory search of. In fact, it's quite common in many of these asset forfeiture cases, you may have an individual who was guilty of transporting drugs in a vehicle and that vehicle gets seized, but perhaps it belonged to another individual or their parent and they weren't even present. But the vehicle still subject to seizure because it was used in furtherance of the commission of the offense, which here there's no question this vehicle was used in furtherance of an offense enumerated under article 36, which made it a valid seizure and a subsequent valid inventory search. Now in the, in our brief, you know, for all these reasons, the trial court's ruling was fatally flawed and the motion should never have been granted. But we also argued in our brief that there was an alternative basis, even if you found that an inventory search could serve as a proper basis. And that was the fact that the officer had probable cause based on the furtive movements of the defendant. And so the record is clear. Huebner was called to this scene because another detective coroner had observed the defendant and coffee inside this vehicle. That officer knew they were suspects in this investigation on this unrelated firearm offense, and he knew that coffee had an arrest warrant. So he called Huebner to the scene. The case law is clear that the knowledge of one officer is transferred to all the officers as part of the investigation. So Huebner arrives and he observes the vehicle, but he finds a second issue. The front license plate is missing. So he determines he's going to initiate a traffic stop based on that. When he initiates the traffic stop, the vehicle flees and alludes. So that's another basis. And that's also a consciousness of guilt. When a vehicle flees, it's indicative of a consciousness of guilt that there's some other illegal offense that's going on. Huebner goes to the residence on a hunch that they're going to return to 900 North Harrison because defendant and coffee are going to need to be dropped off. And he approaches the vehicle. Defendant steps out of the vehicle when he steps in. He performs a pat down. He instructs defendant to stand at the rear of the vehicle away from the door. He then goes to perform a pat down of the driver. While he's performing that pat down, the defendant leans over inside the vehicle where he was sitting and begins making, as Huebner described it, furtive movements as if he's moving objects around. So he tells defendant to step back away from the vehicle, and then he performs the inventory search. What was interesting about that fact, when he testified about it, he started in the front of the compartment. He didn't begin where defendant was making his furtive movements, which I think supported a finding that he was always just planning to do an inventory search. But even still, once those furtive movements occurred, there was now an independent basis to search that backseat area. And when he did, he found a firearm located underneath the backpack where the defendant had been making those movements. So, number one, when the defendant began making those furtive movements, there's an officer safety issue that comes into play. There's, you know, having already patted down the defendant, it's possible he could have been reaching for a weapon. It's hard to say, but this vehicle, which had already fled and eluded the police, you know, the officer would have been reasonable to perform another pat down and search the area in order to keep himself safe. But in his brief, defendant argued that we had actually invited this error because the trial court had asked the prosecutor whether or not this could serve as an independent basis. And in my assessment, the prosecutor answered that question erroneously and said that it could not serve as. But this doesn't actually fall within invited error because in the spirit of the invited error doctrine, we're looking at situations where there's an acquiescence or a strategy that's done with the intent of obtaining some later benefit. You know, there was no benefit to be gained by conceding this. This wasn't the state or this wasn't the state trying to hide the ball and then pull a fast one on defense counsel. It was just the trial court asked a question. And in my assessment, the prosecutor answered off the cuff without having the opportunity to research and wasn't attempting to gain any kind of a litigation advantage from it. So I don't think it falls within the spirit of invited error. That being said, plain error does come into play. And I think that there was a clear error in this situation for all the reasons I've mentioned, the flawed analysis, the incorrect legal conclusions, the reliance on unrelated case law and unrelated tow policy. For all those reasons, I think a clear error occurred. And under Lucy, under Oswald, those cases say that the state has a substantial right to try a case. And when certain evidence is suppressed, that substantial right has been affected. I think Lucy says that specifically. So the people would be asking this question on that basis and hear that alternative argument. Mr. Atwood, in your brief, you do not address the issue of burden, okay, at all. Actually, neither of you do. Okay. So my question is this, when do you believe that the defendant established a prima facie case? And why did the state never make a motion for a finding by the court? As far as the exact moment, as I understand the burden of prima facie cases is established quite easily. But I don't think when the state responded with the credible testimony of the officer with the accurate policy 606, they even provided the written policy, which isn't even required by the case law. And they had the officer testify that I performed the inventory search before the tow, which is what is required by policy 606, that even if the defendant had established a prima facie case, the burden shifted back to the defendant once the state presented that evidence. But the problem being the court all but ignored policy 606. It just focused entirely on 510, which was an incorrect, inapplicable policy. And so at a precise moment, you know, I guess when the, if the burden shifted, it was when policy 510 was presented and Clark was cited, but the court was wrong to rely on those policies. And I would say that when the state presented 606 and when the state argued, you know, about the credible testimony and what he was doing, there was no basis to conclude that he was acting under a pretextual stop. And I think the burden shifted back to the defendant to dispute those. And then you felt that you felt that there was no further need to present evidence and then just moved on to arguing the motion. In hindsight, I armchair quarterbacking it. I suppose that's the case. You know, I don't know what the prosecutor was thinking at that time. And I'm just speculating as to, hypothetically, what would occur. But I think that, you know, regardless of the moment of when I think sufficient evidence was presented to rebut that claim. And I don't think the defendant was ever successful in doing so. Even in his brief on appeal now, the defendant doesn't cite any cases where an asset forfeiture occurred and an inventory search was found to be improper. And as the Supreme Court said in Gibson, as long as the officer is following some kind of standard procedure, it's going to be presumed to be a lawful warrantless exception. And that's exactly what happened in this case. We had all the breadcrumbs from the aggravated fleeing and eluding. The officer informed the driver, this is an inventory search pursuant to this policy. And he testified consistently about that. Mr. Ashwood, I have a couple of real quick questions. First, I think just I want to make sure we're all on the same page. You use the word pretext. The judge didn't find that the stop was pretextual. I think people think of pretextual stops, so they link those two together. What the court found was, in light of some of the facts that she observed, that she used pretext as a description for the search. In other words, the inventory search was a pretext. It was actually an investigatory search. Just so we're all clear about the use of pretext, it had nothing to do with the stop of the vehicle, correct? Correct. Okay. Because it came out that way a couple of times. My next issue is, so assuming for a moment you're right, and they're perfectly within the law to conduct an inventory search and follow the procedures, is it a fact that there was never any documentation? Inventory search means you create an inventory. Inventory is also a document. Is it a fact that no police officer ever filled out any paperwork as to what they found in the vehicle, in essence, creating the quote-unquote inventory, which is contemplated in an inventory search? There's not an inventory sheet in the record that contains a list of items. And there's a couple possible reasons for that. First of all, the officer, the policy talks about the officer should not try to just take everything that's in the vehicle. They should try to take only... I'd rather do this. Were any of the things you're about to say expressed or put on in evidence at the hearing as to why there was no documentation, no procedure followed, and no inventory created? No, sir. Okay. Thank you. Thank you. Do your honors have any further questions? With that, I would ask this court to reverse the trial court's order granting the motion to suppress and remand this matter for further proceedings. Thank you. Thank you, Mr. Atwood. Mr. Boyd? Good morning, your honors. Andy Boyd from the State Appellate Defender's Office on behalf of Christopher Smith. If it please the court and counsel, at the start, I'd like to point out this is not an asset forfeiture case. What this case is about is about whether or not the purported inventory search was done pursuant to law. So this is an inventory search case. This is not an asset forfeiture case. It's our position that this court should affirm the judgment of the circuit court. And the main reason is that the purported inventory search of this vehicle was an unreasonable search primarily because it was a pretextual rummaging for contraband, which is not allowed under the Constitution, either the United States Constitution or the Illinois Constitution. And that leads me into Justice Peterson's point, which I think was an apt one. We need to draw a distinction here, which unfortunately the state didn't make in its brief, and it's not making here an oral argument. And it's an important distinction between different types of pretext. There's pretext in the context of a vehicle stop, and there's pretext in the context of an inventory search. Pretextual vehicle stops generally are constitutionally okay. Pretextual inventory searches are not okay, according to the Illinois Supreme Court, and I've cited these cases in my brief. So that's a really important distinction that we need to underline here from the outset. And there's a couple other important distinctions that I'd like to outline before I get into the meat of my argument. And the first one is between a vehicle impoundment and an asset forfeiture proceeding. The state conflates these issues in its brief and then its reply brief as well. This is a distinction without a difference. And your honors, with all respect to the state, this is not a distinction without a difference. It's an important distinction in this case. The police are clearly allowed to seize or impound vehicles that are subject to forfeiture. That's Illinois statutory law. There's no question about that. It's a separate matter, a conceptually separate matter of whether that vehicle then is going to be forfeited. And forfeiture procedures occur in courts of law. So these are two different things. Officer Huebner here didn't perform an asset forfeiture. What he did was seize the vehicle. So this is the first important distinction I'd like to draw is between vehicle seizure or impoundment and asset forfeiture proceedings. There's also a distinction I'd like to draw between a justification for a vehicle impoundment and a justification for an inventory search of these vehicles. Again, this is where the state starts to conflate issues. And we need to be clear here that these are conceptually distinct issues. They require conceptually distinct legal justifications. They're separate actions by law enforcement. The first thing that happens is that a vehicle is seized or impounded. And that's what happened here. Officer Huebner impounded this vehicle. The second thing that happens, and this is conceptually and legally distinct, is that there then can be an inventory search of that vehicle. Both of these things, the impoundment and the inventory search have to be done pursuant to law. And again, they require separate constitutional legal justifications. So with those distinctions drawn, the first thing, and I will acknowledge that the seizure or impoundment of the vehicle in which Christopher was traveling was proper. There's no question. According to Officer Huebner's testimony, which is unrebutted, he hits his emergency lights and the driver of this vehicle speeds off, goes through a red light and a stop sign. Mr. Boyd, would you acknowledge, though, that in the trial court, the majority of the defendant's argument was that the impoundment was not lawful? I would. I would, Your Honor. And I would respectfully remind the court that it can affirm for any reason apparent from the record. And so what I'm doing is, and I will agree, Your Honor, what I'm doing here in my brief and what I'm doing in oral argument is varying slightly from the arguments that that defense counsel made in the circuit court. You're correct about that. So we again, we agree that the impoundment was lawful. This is not the end of the story. The state would have this court believe that that's the end of the story. Well, once a vehicle is seized, says the state, the officer can go ahead and search the vehicle in any manner that he or she pleases, call it an inventory search, and everything's cool. We'll just go ahead and put some handcuffs on the defendant and lead him off to jail. All due respect to the state, that is not what the law says. That is not how this procedure is supposed to work. Once a vehicle has been lawfully seized, there's a separate set of justifications that has to occur in order for the inventory search to be proper under the law. And that's where we are focusing, at least I am focusing my attention before this court today and in the briefs that I've written. The search of the vehicle was unlawful, and that's the problem. Inventory searches, according to the Illinois case law, serve three purposes, and they also must satisfy three requirements. Those purposes, we want to protect the owner's property, number one. Number two, we want to protect the police from claims that they're losing property or stealing property, and we also want to protect the police from potential danger. The requirements, the original impoundment of the vehicle must be lawful. Okay, we've got that. We can see we've got that here. The next two, however, we don't have. The purpose of the inventory search has to be to protect the stolen property. The inventory search, and this is crucial, the inventory search has to be conducted in good faith, pursuant to reasonable standardized police procedures, and not as pretext for an investigatory search. And that's the key problem here, is that the second and third requirements weren't followed here. The vehicle search here was just an improper pretext. The purported inventory search was an improper pretext for an investigatory search, an investigatory rummaging of the vehicle. Mr. Boyd, you acknowledge, Mr. Boyd, you acknowledge the vehicle is not the defendant's vehicle? It certainly seems that way from the record. It seems that the vehicle was registered to a misfoy who was driving the vehicle, correct. Well, how do we know, how do we know that this vehicle search, this purported inventory search, was just an unconstitutional general rummaging for contraband? Well, we know this, Your Honors, because Officer Hubert told us so when he testified. Now, he didn't use those words. Of course, he wouldn't use those words, but that's what he testified to. He testifies both on direct and cross-examination, only that he performed an inventory search on the immediately after he declared the vehicle ceased. He never mentioned any inventory search policy, and crucially, he testifies that, well, I was searching for items of interest, items of interest to a law enforcement argument. That's really interesting in an inventory search. That's not what inventory searches are for. They are not for officers to search for items that are of interest to them. What they are for is to document personal items that may be left in that vehicle and then to go ahead and list these on an inventory report to protect everybody. It protects the occupants of the car, protects the police, it protects everybody. Officer Hubert's testimony here that he was searching for items of interest was really crucial and really important, and he also didn't testify that he found anything else. He didn't testify that, for example, he found anybody's wallet, anybody's cell phone, a set of car keys, old clothing, a pair of shoes, a book, a magazine, a purse, whatever else it might have been. He didn't testify that he found anything else in that car, and as Justice Peterson correctly points out, he didn't document anything else on an inventory report. The only thing Officer Hubert says that he found during the search was a gun, and that was, quote, of interest, unquote, to him because he was a police officer and what he was doing and what the trial court correctly found that he was doing was conducting a pretextual search because this whole incident from the get-go was simply a follow-up to what was a perceived gun offense, a shooting offense that occurred a month earlier that Christopher and perhaps a Mr. Coffey may have been involved in. So this whole thing was pretextual from the start. There was never any intention of this officer to issue any sort of a ticket for a misplaced license plate, nothing like that. This whole show was about finding contraband, finding that gun, and crucially, crucially here, what happened was the officer simply starts rummaging through Christopher's car, and there's no testimony, none from this officer about any kankakee inventory search policy. The state here keeps saying over and over again that this search was conducted pursuant to a policy, and all the state does is point to asset forfeiture policy. This is not an asset forfeiture case. This is an inventory search case. The search has to be done pursuant to a standardized inventory search policy. It wasn't. It just wasn't. Excuse me, Ross. A search that was done pursuant to a standardized inventory search policy might have, for example, we will tow this car to the police station. We'll tow this car to the police station, and then we're going to pull out this policy, and we're going to take a look at it. What does the policy say? Well, for example, it might say that we're going to take a look in the front seat. We're going to take a look in the glove compartment. We can take a look in the console if there is one. Backseat's okay. Trunk's okay. We're going to look at all these places. We're going to find everything that's in there. We're going to list all this stuff in an inventory report. There's no testimony that anything like that was done. So the bottom line here is, number one, this was an unconstitutional general rummaging for contraband. It wasn't an inventory search. And number two, this wasn't done pursuant to any sort of inventory search policy. So those are two big, big reasons. The state's got a real problem here with this inventory search, because it wasn't an inventory search. It was a general rummaging for contraband. That's not allowed under the United States Constitution. At the tail end of its brief, and here in oral argument, the state sort of taps on an independent probable cause argument, and there's a whole bunch of problems with this argument. And the first and most obvious is the state's attempted use of the plain error doctrine. And it's not clear where this is coming from, frankly. The state doesn't talk about closely balanced evidence. The state doesn't talk about any sort of structural problems. The state just says, well, this is plain error, and the court ought to consider this under the plain error doctrine. There's a huge invited error problem here. The prosecutor conceded that but for the aggravated fleeing and eluding offense, there would have been no probable cause to search his vehicle. And what that led the trial court to do then was to not inquire any further about whether there was any independent probable cause. So the prosecutor, in effect, said, no, there's not any independent probable cause. Trial court says, okay, great, let's just focus on the inventory search problem. So there's an invited error problem. There's also a forfeiture problem because the state didn't rely on this in the trial court, and the state wants to rely on it. Now this argument is forfeited. And look, even if this court wants to go ahead and take the step, okay, we're going to address this under the plain error rule, which in all due respect to the state, this court should not do because this has been procedurally defaulted in about 17 different ways. The court should not go there. But if it decides to, there's no independent probable cause on this record to determine that there was probable cause to search his vehicle. Officer Schieber didn't testify as to what specific defenses that Christopher and Mr. Coffey may have committed. On direct examination, all he said was that there are suspects in a shooting that occurred a month ago. Christopher was inside Coffey's residence. On cross-examination, he says, well, there's a shots fired scene. There's bullet shells all over the place. There's no indication that these guys were arrested at the scene. There's no indication what offenses these guys may have committed. The record is nowhere near developed enough for this court to even consider this on appeal. So the court ought to reject this argument. And in conclusion, we prospectively request that this court affirm the circuit court's decision to grant the defense's motion to suppress the evidence found during the unlawful search of the vehicle that Christopher was traveling in. If there's any other questions from the court, I'm happy to answer them. Are there any additional questions? No. I do not. Thank you, Mr. Boyd. Thank you, Your Honor. Mr. Atwood, any rebuttal? Yes, Your Honor. Thank you. The first thing I'd like to address is counsel's gross mischaracterization of the testimony regarding whether he was looking for things of interest. On page 49 of the record, Huebner was asked specifically if he was looking for anything, if he found anything of interest. And he responded, in the front of the vehicle, no. Then he was asked if he found anything in the backseat, and he said a large bag. He never testified he was looking for things of interest. He was simply asked what he found. So that's not, this wasn't a fishing expedition on his part to be looking for guns and other contraband. He was simply responding to the question. And with regard to questions, the reason why he didn't testify to what inventory was taken is because he was never asked what test, what he took, what inventory was taken out of the vehicle. So we don't have a record on that because he was never asked about it. And he wasn't the officer who filled out the subsequent report anyway. That sort of goes back to what was going on in the Ocone case where this court's not going to concern itself with a paperwork foul up that happens after the fact. What matters in any probable cause determination is what was going through that officer's head at the time when he the asset forfeiture language. I will admit I used some inartful language, and I probably could have been more specific in simply referring to this from the outset as a seizure and impoundment in every instance. But this gets to the defendant's argument, which is essentially putting the cart before the horse. Before you can even get to an asset forfeiture, you've got to have an enumerated offense be committed. You've got to have a vehicle stopped and seized, and you have to inventory that or wherever else. So we have the officer observe the crime. It qualifies under the asset forfeiture statutes. He seizes the vehicle. He informs the driver that he's seizing the vehicle for that express purpose. And then very tellingly, he conducts that inventory search, not starting with where he saw the defendant moving or in coffee seat. He starts in the front passenger and simply works his way back, performing a standard run-of-the-mill inventory search. If he were looking for guns specifically, he would have started his search right where he saw the furtive movements. But he didn't because he was always going to perform this inventory search. That's all he ever testified to. Numerous times, four or five times, he testified he was performing the search for that reason. The court found him credible, yet the court reached opposite conclusions. So I don't think there's any merit to this argument that whatever happened after the fact, whether or not the state's attorney ends up filing for a forfeiture, those have sort of fallen out of favor judicially in recent years. The courts have been frowning upon that. So it's entirely possible the state's attorney just exercised discretion and never filed it. All that matters is was the standardized procedure followed? That's the Gibson case. And as long as the officers were acting under a standardized policy, it's going to be a lawful warrantless exception to conduct that inventory search. And that's what we have. We have point A to point B offense, seizure, inventory, and tow. It has to go in that order. You can't tow a vehicle and then do the inventory search because that's going to create problems of allegations of planting evidence. It breaks that protective prophylactic. You have to do the inventory search before you do anything else after the seizure. Where's the inventory? We don't know whether anything was taken or not, and the officer who performed the inventory search wasn't the same officer that performed the records keeping. And I actually believe policy 606 refers to the fact that there's a separate officer that does like a criminal investigative officer. I believe it's on page E23 or 24. There is a policy where it talks about that person is responsible for the record keeping and that person was not the officer in this case. So I will concede there's some sort of an issue with the paperwork after the fact, but I don't believe that it tainted the quality of the investigation leading up to that fact. And I don't think it's dispositive because it doesn't rebut any of the facts that were established that there was a qualifying offense. The officer announced his search, and then he performed the search, and then the vehicle was towed. Even if there were problems after the fact, they don't affect the quality of the search and the probable cause that led up to it. And I think all the case law that I cited supports that same even when there are mistakes as there were in OCONN, the court just simply said that it's not relevant to consider that. And if there are no further questions, I would ask this court to reverse this matter for further proceedings. Thank you. Are there any other additional questions? No. No. Okay. I'm sorry. I said thank you, gentlemen. Oh, we thank you both for your advisement, and we'll issue a written decision as quickly as possible.